UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KAREN E. THOMAS,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          No.:   3:09-CV-71
                                    )                 (VARLAN/SHIRLEY)
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

This case is before the Court for disposition of plaintiff's Motion for Summary

Judgment [Doc. 11] and defendant's Motion for Summary Judgment [Doc. 15]. Plaintiff

seeks judicial review of the decision of the Administrative Law Judge (the "ALJ") denying

her benefits, which is the final decision of the defendant, Michael J. Astrue, Commissioner

of Social Security (the "Commissioner").

On December 16, 2005, plaintiff filed an application for Disability Insurance Benefits

("DIB"), claiming a period of disability which began on July 1, 2005 [Tr. 9]. Her application

was denied initially and upon reconsideration. Plaintiff then requested a hearing. On May

19, 2008, a hearing was held before an ALJ to review plaintiff's claim [Tr. 19-48]. On July

22, 2008, the ALJ found that plaintiff was not disabled [Tr. 9-18]. The Appeals Council

denied plaintiff's request for review on January 12, 2008. The decision of the ALJ thus

became the final decision of the Commissioner [Tr. 1-3]. Plaintiff now seeks judicial review

of the Commissioner's decision.

# I.     ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.

2.     The claimant has not engaged in substantial gainful activity since July 1, 2005, the alleged onset date (20 CFR 404.1520(b), and 404.1571 *et seq.*).

3.     The claimant has the following severe impairments: anxiety, depression, osteoarthritis, degenerative disc disease, and mood and bipolar disorder (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to twenty pounds occasionally, or ten pounds frequently, stand or walk at least two hours, and sit for about six hours out of an eight hour day. The claimant cannot perform more than occasional climbing ramps/stairs, stooping, or crouching, or any climbing ropes, ladders, or scaffolds.  She can attend and persist on simple tasks and may have some, but not substantial difficulty with detailed tasks, working with the general public, and accepting criticism.  She can relate to peers and supervisors in most work settings and adapt to infrequent changes.  She cannot attend and persist on complex tasks and will have difficulty coping with frequent changes.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on October 27, 1960 and was 44 years old, which is defined as a "younger individual," on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school equivalency diploma and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2005, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 11-18].

## II.    Disability Eligibility

An individual is eligible for DIB payments if she is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). A "disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if her physical and/or mental impairments are of such severity that she is not only unable to do her previous work, but also cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area

3

in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. *Id.* § 423(d)(2)(A).

Whether a DIB claimant is under a disability is evaluated by the Commissioner pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, she is not disabled.

2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. *Id.* The burden of proof shifts to the Commissioner at step five. *Id.* At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

4

## III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528. On review, plaintiff bears the burden of proving her entitlement to benefits. *Boyes v. Sec'y of Health & Human*

5

*Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   Analysis

On appeal, plaintiff argues that substantial evidence did not support the ALJ's decision that she was not under a disability.  Plaintiff contends that the ALJ incorrectly determined her physical residual functional capacity ("RFC") because he improperly found that her statements about the severity of her back and neck pain and its limiting effects were not credible [Doc. 12 at 6-9].  Plaintiff also contends that the ALJ incorrectly determined her mental RFC because he failed to give appropriate weight to the opinion of plaintiff's treating psychiatrist, Dr. Leela Sud [Doc. 12 at 9-12].  Plaintiff argues that the ALJ's errors caused him to make a determination of her RFC that was incorrect and unsupported by the record.  Plaintiff maintains that she is unable to perform basic job functions and is therefore unable to obtain gainful employment.  Accordingly, plaintiff concludes that she is under a disability and therefore entitled to DIB payments.

The Commissioner contends in response that substantial evidence supported the ALJ's determination of plaintiff's RFC.  The Commissioner argues that the ALJ's finding concerning the credibility of plaintiff's statements about the severity of her back and neck pain and its limiting effects was supported by the inconsistency of plaintiff's statements with her reported daily activities, her treatment history, and objective test results [Doc. 16 at 12].  The Commissioner also argues that the ALJ's decision to discount Dr. Sud's opinion was proper because the opinion was not based on or supported by sufficient clinical findings

6

[Doc. 16 at 15].  The Commissioner concludes that substantial evidence supported the ALJ's determination that plaintiff has the RFC to perform work as a laundry folder, hand-packager, or inspector/checker/grader, and is therefore not under a disability and not entitled to DIB payments.

**A.    The ALJ's Evaluation of Plaintiff's Credibility when Determining Her Physical RFC**

An ALJ must determine a DIB claimant's RFC between steps three and four of the five-step sequential disability evaluation process.  20 C.F.R. § 404.1520(a)(4).  A claimant's RFC is defined as "the most [the claimant] can still do despite [her] limitations."  *Id.* § 404.1545(a)(1).  In order to determine a claimant's RFC, the ALJ must consider "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," and "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons."  *Id.* § 404.1545(a)(3).

When a claimant alleges that her severe impairment causes pain that results in functional limitations, the ALJ must determine whether that allegation "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.* § 404.1529(a).  "Objective medical evidence" means "medical signs and laboratory findings."  *Id.*; *see also id.* § 404.1528 (medical signs are "anatomical, physiological, or psychological

7

abnormalities which can be observed, apart from [the claimant's] statements," and laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques"). "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [the claimant's] impairment(s) and any related symptoms affect [the claimant's] ability to work." *Id.* § 404.1529(a). "Other evidence" specifically includes the claimant's own statements about her pain and any description provided by the claimant about how that pain affects the activities of daily living and ability to work. *Id.*

When a claimant's allegation about the extent to which pain limits her functioning cannot be substantiated with objective medical evidence, the ALJ must decide whether the "other evidence" corroborates or supports the allegation. *Id.* § 404.1529(c)(3); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). *See also* 20 C.F.R. § 404.1545(e) ("Pain . . . may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological, or psychological abnormalities considered alone."). Typically, some of the most important pieces of "other evidence" are the claimant's own subjective statements about the intensity, persistence, and functionally limiting effects of the pain. In order to properly determine whether the claimant's own subjective statements actually support her allegation of functional limitation due to pain, the ALJ must first "make a finding

on the credibility of [the claimant]'s statements based on a consideration of the entire case record," including "any statements and other information provided by treating or examining physicians." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which pain limits her personal activities. *Id.* If the ALJ decides that the claimant's statements are credible, then he may move on to determine whether the statements in fact support the claimant's allegation. If the ALJ decides that the claimant's statements are not credible, then he may discount their probative value and move on to consider whether there is additional "other evidence" that corroborates or supports the claimant's allegation.

In this case, plaintiff alleges that her back and neck pain is so severe that it renders her totally unable to work. The ALJ found at steps two and three of the sequential evaluation process that the "osteoarthritis" and "degenerative disc disease" that caused plaintiff's back and neck pain were medically determinable "severe" impairments that did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 [Tr. 11-12]. Before moving to step four, the ALJ was required to determine plaintiff's RFC. Because the ALJ found that the functionally limiting effects of plaintiff's pain could not be substantiated by objective medical evidence, he was required to consider whether "other evidence" corroborated or supported plaintiff's allegation that her pain was so severe

9

that it left her totally unable to work.[1]  *See* 20 C.F.R. § 404.1529(a).  "[S]ymptoms, such as

pain, are subjective and difficult to quantify," *id.* § 404.1529(c)(3), so the most important

pieces of "other evidence" in this case were plaintiff's own statements and subjective

complaints about the severity of her pain and its limiting effects.

The ALJ found that "[plaintiff]'s statements concerning the intensity, persistence, and

limiting effects of [her] symptoms are not credible to the extent they are inconsistent with .

. . an ability to perform work activity" as a laundry folder, hand-packager, or

inspector/checker/grader [Tr. 16].  The ALJ provided two broad reasons for his credibility

finding.[2]  First, the ALJ pointed out that although plaintiff's "clinical examinations revealed

---

[1]Plaintiff challenges the ALJ's finding that the functionally limiting effects of her pain could
not be substantiated by objective medical evidence [Doc. 12 at 8].  As plaintiff explains in her
memorandum:

> [T]he ALJ's statement that "[o]bjective findings are minimal despite the claimant's
> complaints" is unsupported by the record as a whole . . . [T]he record is inundated
> with objective test results, including MRI reports of both the lumbar and cervical
> spines which show degenerative disk disease, disk herniation, and encroachment, and
> as such substantiate allegations of back and neck pain.

[Doc. 12 at 8].  While the Court agrees with plaintiff that her MRI results and record of surgeries
are consistent with her allegation of functionally limiting pain, the Court also agrees with the ALJ
that the extent to which plaintiff's functioning is limited cannot be substantiated with MRI results
and a record of surgeries.  As noted *supra*, "[s]ymptoms, such as pain, are subjective and difficult
to quantify." 20 C.F.R. § 404.1529(c)(3).  The ALJ was therefore required to evaluate the credibility
of plaintiff's own statements about the severity of her pain and its limiting effects.

[2]The Court agrees with the Commissioner's analysis of the ALJ's credibility finding:

> Plaintiff argues that the ALJ failed to adequately evaluate her credibility, citing to
> two paragraphs in the ALJ's decision.  Plaintiff misunderstands the totality of the
> ALJ's decision.  It was not just in these two paragraphs, but throughout the decision,
> where the ALJ discussed the credibility factors . . . [T]he ALJ specifically considered
> [p]laintiff's daily activities, her subjective complaints, her treatment history, and
> objective test results.  The ALJ's credibility analysis may be concise, but that does
> not require reversal.

[Doc. 16 at 12].

subjective reports of pain," "none of her treating or examining physicians reported that she had any significant neurological or motor deficits" [Tr. 15]. Second, the ALJ stated that "there is evidence that [plaintiff] stopped working for reasons not related to the allegedly disabling impairments" [Tr. 16]. In other words, the ALJ decided that plaintiff's statements that her pain was so severe that it rendered her unable to work were not credible because plaintiff was in fact working, and ceased working only because she entered a narcotics abuse treatment center [Tr. 16, referring to plaintiff's testimony at Tr. 28].

An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence"). Thus, if the two reasons given by the ALJ as support for his finding that plaintiff was not credible are supported by substantial evidence, the Court must find that the credibility determination was proper.

### 1. Inconsistency of Plaintiff's Own Statements with Assessments of Her Treating and Examining Physicians

With regard to the ALJ's first justification, plaintiff argues that at least one of her examining physicians did indicate that she had significant functional limitations resulting from her neck and back pain [Doc. 12 at 8]. Specifically, plaintiff argues that "consultative

physical examiner Dr. [Joseph] Johnson opined that [plaintiff]'s back and neck pain prevent her from performing more than a limited range of sedentary work, and for less than an eight-hour day" [Doc. 12 at 8] (citing [Tr. 413]). The Commissioner responds that Dr. Johnson's assessment was appropriately discounted by the ALJ because it was completed less than one month after plaintiff underwent back surgery [Doc. 16 at 12]. The Commissioner argues that Dr. Johnson's assessment reflected a temporary exaggeration of plaintiff's limitations attributable to her recovery from surgery [Doc. 16 at 12]. The Commissioner points out that the ALJ recognized "the closeness in time" of Dr. Johnson's assessment to plaintiff's operation and appropriately gave the assessment "minimal weight" [Doc. 16 at 12]. The Commissioner concludes that, "once [Dr. Johnson's] assessment is discounted," the ALJ's statement that "none of [plaintiff's] treating or examining physicians reported that she had any significant neurological or motor deficits" [Tr. 15] reflects the record evidence [Doc. 16 at 12].

The Court agrees with the Commissioner's assessment. Plaintiff underwent back surgery on January 25, 2006 [Tr. 384]. Dr. Joseph Johnson, a state disability determination services ("DDS") physician, examined plaintiff on February 27, 2006. The ALJ concluded that Dr. Johnson's assessment did not corroborate or support plaintiff's own statements about the severity and limiting effects of her back and neck pain because Dr. Johnson's "examination was performed within a month of [plaintiff]'s lumbar surgery, while [she was] still under the care of her neurosurgeon" [Tr. 15]. The Court finds that the ALJ's conclusion was reasonable and supported by substantial evidence. An assessment of functionality

12

conducted while a claimant is recovering from surgery does not accurately reflect the claimant's long-term limitations. Therefore, Dr. Johnson's opinion does not corroborate plaintiff's own statements about the severity and limiting effects of her back and neck pain. Plaintiff has not pointed to any other assessments by treating or examining physicians that indicate that she had "significant neurological or motor deficits" or functional limitations that rendered her totally unable to work. Accordingly, the ALJ's first reason for finding plaintiff's statements incredible–the fact that "none of her treating or examining physicians reported that she had any significant neurological or motor deficits"–was supported by substantial evidence.

### 2. Evidence that Plaintiff Stopped Working for Reasons not Related to Her Back and Neck Pain

Plaintiff does not challenge the ALJ's second justification for his finding that plaintiff's statements about the severity of her pain and its limiting effects were not credible. The ALJ stated that "there is evidence that [plaintiff] stopped working for reasons not related to the allegedly disabling impairments" [Tr. 16]. The Court finds that the ALJ's statement was supported by substantial evidence. Plaintiff testified that she left her last job with a janitorial service because she enrolled in a narcotics abuse treatment center in Florida [Tr. 28]. The ALJ properly considered plaintiff's testimony about why she ceased working when evaluating the credibility of plaintiff's allegation that her back and neck pain rendered her totally unable to work.

13

### 3. The ALJ's Credibility Finding Was Supported by Substantial Evidence

As discussed *supra* Parts IV.A.1 and 2, the Court finds that both of the ALJ's reasons for finding that plaintiff's allegation of disabling pain was not credible were supported by substantial evidence. Accordingly, the Court finds that the ALJ's finding that "[plaintiff]'s statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with . . . an ability to perform work activity" as a laundry folder, hand-packager, or inspector/checker/grader was supported by substantial evidence [Tr. 16]. Because the ALJ articulated two valid reasons for discounting plaintiff's subjective statements about the severity of her back and neck pain and its limiting effects, the Court finds no basis for disturbing his credibility finding. *See Rogers*, 486 F.3d at 249 ("credibility determinations regarding subjective complaints" must be "reasonable and supported by substantial evidence").

### B. The ALJ's Consideration of Dr. Sud's Opinion when Determining Plaintiff's Mental RFC

Plaintiff contends that the ALJ incorrectly determined her mental RFC because he failed to give appropriate weight to the opinion of plaintiff's treating psychiatrist, Dr. Leela Sud [Doc. 12 at 9-12]. The Commissioner responds that the ALJ's decision to discount Dr. Sud's opinion was proper because the opinion was not based on or supported by sufficient clinical findings [Doc. 16 at 15]. Dr. Sud evaluated plaintiff's functional limitations resulting from her mental impairments and completed an "Assessment of Mental Limitations" on September 19, 2006 [Tr. 465-468]. Dr. Sud's assessment was accompanied by a cover letter

14

dated September 25, 2006 [Tr. 464]. In the letter, Dr. Sud stated the following: "[Plaintiff's] prognosis is guarded. I do believe that her condition would affect her ability to work. There isn't any objective testing that supports my opinion" [Tr. 464].[3] In the assessment, Dr. Sud noted that plaintiff's ability to follow work rules, deal with the public, and relate to supervisors and co-workers was "fair to poor" [Tr. 466-7]. Dr. Sud also noted that plaintiff's ability to deal with work stress and demonstrate reliability was "poor" [Tr. 467].

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." *Id.* § 404.1527(a)(2). A medical source is considered a treating medical source if the source has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1502). An ALJ "must" give a medical opinion provided by a treating source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the

---

[3] Plaintiff argues that Dr. Sud's very brief statement amounts to an opinion that plaintiff "is incapable of sustaining full-time work activity" [Doc. 12 at 9-10]. The Court disagrees. Dr. Sud never stated that plaintiff cannot sustain full-time work activity. Dr. Sud's statement that "I do believe that [plaintiff's] condition would affect her ability to work" is simply not equivalent to an opinion that plaintiff cannot work at all.

15

case record." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to the treating source's opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians").

In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. *Id.* §§ 404.1527(d)(2)-(6).

In this case, the ALJ expressly addressed Dr. Sud's opinion. The ALJ stated as follows:

> An Assessment of mental limitations submitted by Dr. Sud of Peninsula in September 2006 indicated that the claimant had the capacity to maintain personal appearance, interact appropriately, communicate effectively, and

16

engage in other aspects of social functioning. She had a fair ability to relate to supervisors and coworkers, follow work rules, and deal with the public. She had a poor ability to deal with work stress, demonstrate reliability, adapt to stressful circumstances in work or work-like settings where failure to adapt results repeated episodes of deterioration or decompensation which cause her to withdraw or to experience an exacerbation of symptoms, and maintain concentration, persistence, and pace as measured by the ability to timely complete tasks that may be found in a work-like setting. In an attached letter, Dr. Sud noted that the claimant's prognosis was guarded, "her condition would affect her ability to work," *and there wasn't "any objective testing that supports my opinion"* (emphasis added).

[Tr. 13]. Later in his narrative decision, the ALJ stated that "the undersigned does not accept Dr. Sud's overly restrictive opinion which *contrasts sharply with the other evidence of record* and renders it less persuasive" [Tr. 16].

It is clear to the Court that the ALJ expressly provided two reasons, italicized above, for why he rejected Dr. Sud's opinion. Plaintiff argues that these reasons "should not survive scrutiny" because they are not "good reasons" as required by 20 C.F.R. § 404.1527(d)(2) [Doc. 12 at 11-12]. Because Dr. Sud was plaintiff's treating physician, the ALJ was required to give Dr. Sud's opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). But the ALJ recognized that Dr. Sud's opinion was not supported by any objective testing, and thus was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." The ALJ also stated that he found Dr. Sud's opinion to be "sharply" inconsistent with "the other evidence of record" [Tr. 19].

17

The Court thus finds that, although the ALJ's reference to "the other evidence of record" is somewhat vague, there is nevertheless substantial evidence in the record that conflicts with Dr. Sud's opinion. For example, Dr. Sud's opinion that plaintiff had a "poor" ability to demonstrate reliability is at odds with plaintiff's testimony that she reliably attends Narcotics Anonymous ("NA") meetings on a daily basis, chairs meetings on Thursdays and Fridays, and for a period of time acted as her NA group's "service representative" [Tr. 30, 37]. Further, Dr. Sud's opinion conflicts with the opinions provided by state DDS psychologists [Tr. 415-21, 430-47]. The Court finds that the ALJ's determination that Dr. Sud's opinion was inconsistent with the record as a whole was supported by substantial evidence.

Although the ALJ did not specifically set forth the 20 C.F.R. § 404.1527 factor analysis in his decision, he did explain that (1) Dr. Sud's opinion was inconsistent with the record as a whole, *see* 20 C.F.R. § 404.1527(d)(4); and that (2) Dr. Sud could not provide any evidentiary basis to support her opinion, *see* 20 C.F.R. § 404.1527(d)(3). The ALJ focused on these two factors to appropriately decide that Dr. Sud's assessment was entitled to no weight. The Court finds that even if the ALJ erred by failing to expressly consider the other factors, the error was harmless and does not warrant remand. The two reasons provided by the ALJ are sufficient to support a determination that Dr. Sud's opinion was entitled to no weight. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical

18

findings and are consistent with the evidence."). The Court therefore finds that the ALJ's decision to give Dr. Sud's opinion no weight was supported by substantial evidence.

## V. Conclusion

The Court concludes that the ALJ's determination that plaintiff had the RFC to perform work as a laundry folder, hand-packager, or inspector/checker/grader was supported by substantial evidence.

An order reflecting this opinion will be entered.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE